**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **ALLISON VALDEZ DELACRUZ,**<br><br>Plaintiff,<br><br>vs.<br><br>**NANCY A. BERRYHILL,** as Acting Commissioner of Social Security,<br><br>Defendant. | CASE NO. 18-cv-00715-YGR<br><br>**ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 34, 39 |

Plaintiff Allison Valdez Delacruz ("Delacruz") filed this action against defendant Nancy Berryhill as Acting Commissioner of the Social Security Administration ("Commissioner"), seeking judicial review of the Commissioner's finding that she was not disabled under section 216(i) and 223 of the Social Security Act (the "Act").

Now pending before the Court are the parties' cross-motions for summary judgment. (Dkt. Nos. 34, 39.) Plaintiff argues that the Administrative Law Judge ("ALJ") erred by finding that plaintiff did not meet Listing 1.04 on Step Three and that plaintiff had sufficient residual functional capacity to preclude a finding of disability. Based thereon, plaintiff seeks reversal with a finding of disability and an award of benefits.

Having carefully considered the papers submitted and the administrative record in this case, and for reasons set forth below, defendant's cross-motion is **DENIED** and plaintiff's motion for summary judgment is **GRANTED** with instruction that the action be **REMANDED** to the ALJ for further administrative proceedings consistent with this Order.

## I. BACKGROUND

### A. Procedural History

On October 7, 2013, plaintiff filed an application for Title II, Social Security Disability Insurance benefits, claiming disability since June 25, 2013. (Dkt. No. 33, Administrative Record ("AR") 136.)[1] On October 6, 2016, the ALJ held a hearing wherein plaintiff and a vocational examiner testified. (AR 15.) On October 26, 2016, the ALJ issued his determination that plaintiff was not disabled under the Act. (AR 25.) The Appeals Council denied plaintiff's request to review the ALJ's decision on December 22, 2017. (AR 1–6.) The ALJ's decision then became the final decision of the Commissioner. On February 1, 2018, plaintiff initiated the instant action seeking judicial review of the ALJ's decision. (Dkt. No. 1.)

### B. Summary of Evidence in the Underlying Proceedings

Delacruz was born in 1971 and was approximately 45 years old at the time of the administrative decision herein. (AR 66.) From 1996 to 2013, she worked as a surgical technician. (AR 64.) She applied for disability benefits in 2013 due to impairment arising out of a work-related back injury and degenerative disc disease. (AR 66.)

#### 1. *Delacruz's Testimony*

At the administrative hearing, Delacruz testified she became disabled as of June 25, 2013. (AR 37–38.) Although there was no precipitating event that took place on that day, Delacruz determined that day to be the appropriate onset date because it was her last day of work at the hospital where she was employed. (*Id.*) As a surgical technician at the hospital, her role had been to ensure that all instruments, supplies, and equipment were prepared for surgical cases, and occasionally, to be present in the operating room in the case of a trauma or emergency. (AR 38.)

Delacruz testified that, at the time of the administrative hearing, she could perform "light duty" and a job involving sitting, "as long as they allow me a 10 to 15-minute [break] every hour . . . where I can actually stand up." (AR 39.) However, she testified that working more than two

---

[1] The claim was initially denied on January 3, 2014, and reconsideration was denied on August 26, 2014. (AR 79–87.) Claimant filed a request for hearing on September 9, 2014. (AR 88.)

2

or three hours per day would cause her significant pain. (AR 47.)

At the time of the hearing, Delacruz was not employed. (AR 52.) Delacruz testified that she was taking a college accounting class which involved attending class twice per week, for two hours per class, during which she takes breaks. (AR 53.)

### 2. *Vocational Expert's Testimony*

One vocational expert, Ronald Morrell, briefly testified at the ALJ hearing. The ALJ asked Mr. Morrell to define plaintiff's past work as a surgical technician under the U.S. Department of Labor Dictionary of Occupational Titles ("DOT"). (AR 37.) Mr. Morrell testified that under the DOT, Delacruz's job as a surgical technician was considered "light exertionally" and "skilled." (*Id.*) He further testified, in response to a question from the ALJ, that surgical technicians had no "transferrable skills to sedentary." (*Id.*)

When asked by the ALJ whether "there [were] sedentary jobs where someone could stand for 10 to 15 minutes hourly," Mr. Morrell responded in the affirmative. (AR 39.) Further, the ALJ posed the following hypothetical:

> [I]f a person was limited to three hours work, as indicated by Doctor so and so, would there be any jobs in the national economy in substantial numbers?

(AR 45.) Mr. Morrell responded that there were not a substantial number of jobs in the national economy "at three hours per day." (AR 46.)

### 3. *Salinas Urgent Care Reports (Sept. 7, 2011 – June 28, 2013)*

Delacruz saw Dr. Steven Schumann and nurse practitioner Deborah Nelson, among others, at Salinas Urgent Care from at least September 7, 2011 through June 28, 2013. A report titled "Doctor's First Report of Occupational Injury or Illness," dated September 7, 2011 and completed by N.P. Nelson, reports that Delacruz exhibited a "stiff" gait but "normal tone and muscle strength." (AR 418–419.) It further describes Delacruz's range of motion as "decreased" with "back flexion, extension, and lateral flexion." (AR 419.) The report indicates that Delacruz was experiencing lower back pain. (*Id.*)

On September 12, 2011, at the request of Dr. Schumann, Delacruz had x-rays taken of her lumbar spine, which showed degenerative disc disease and "moderate 50% degenerative

3

narrowing at the L5-S1 disc space," but no evidence of "fracture or spondylolysis." (AR 360.) Dr. Schumann then began seeing Delacruz for ongoing treatment related to her back. (AR 404–415.) His records indicate that following an MRI of Delacruz's lumbar spine on October 3, 2011, Dr. Schumann diagnosed Delacruz with lumbar radiculopathy. (AR 411–412.) He subsequently prescribed medications for pain management. (*See* AR 408.)

Dr. Schumann's records from 2012 and 2013, when he treated Delacruz on a regular basis, continue to report treatment for lumbar radiculopathy, degeneration of the lumbar disc, and low back pain. For example, a June 26, 2012 report indicate pain aggravated by "bending, squatting, [and] waist bending," but only moderate tenderness. (AR 666.) Delacruz was encouraged to get an epidural steroid injection. (AR 667.) Further, Dr. Schumann's records from August 27, 2012 report "5/5 graded muscle strength of the iliopsoas, quadriceps, hip adductors, gluteus maximus and medius," but "limited active [range of motion]" and a "[negative] bilateral straight leg raise." (AR 582.) On December 12, 2012, Dr. Schumann saw Delacruz again. His records report "mild tenderness of the bilateral lumbar paravertebral area" and "[f]orward flexion" of fifteen degrees. (AR 622.) Delacruz was later referred to a psychiatrist for pain management. (AR 690.)

Dr. Schumann saw Delacruz again from early to mid-2013. Consistent with his earlier reports, Dr. Schmann's records continued to report "degeneration of lumbar disc" and "lumbar radiculopathy" during this period. (*See, e.g.,* AR 458–462, 537.) On June 28, 2013, she was discharged from care. (AR 537.)

### 4. Dr. Howard's Report (June 11, 2012)

On June 11, 2012, Delacruz saw Dr. Mark Howard for a comprehensive orthopedic spine surgical evaluation, based on the recommendation of Delacruz's neurosurgeon, Dr. Gus Halamandaris. Dr. Howard's report indicates limited range of motion and reflexes that are "hyporeflexic but symmetric." (AR 423.) Dr. Howard also found "L5 hypesthesia." (*Id*.) Further, Dr. Howard evaluated Delacruz's x-rays and MRI from 2011. He concluded that her September 2011 x-ray showed "significant disc space narrowing at L5-S1," while her October 2011 MRI showed no "significant neuro compression or stenosis." (AR 424.) Dr. Howard reported that Delacruz wanted to undergo surgery only as a "last resort," and accordingly, he

4

recommended at least one epidural before considering a surgical procedure. (*Id.*)

                    5.  *Dr. Abeliuk's Report (June 4, 2013 – July 3, 2013)*

On June 4, 2013, Dr. Oscar Abeliuk, an orthopedic surgeon, completed a Panel Qualified Medical Evaluation in the context of Delacruz's workers compensation claim. He provided a supplemental report on July 3, 2013.

Dr. Abeliuk's June 2013 report indicates that he performed numerous range of motion tests on Delacruz. (AR 440–443.) His report describes "[s]traight leg-raising in the seated and supine positions [was] positive on the right at 60 degrees and negative on the left at 90 degrees." (AR 444.) An examination of Delacruz's lower extremities showed "right-side radiculopathy." (*Id.*) The circumferences of Delacruz's calves and thighs measured slightly smaller on her left than her right. (*Id.*) Dr. Abeliuk concluded that Delacruz required "work preclusions," including "no lifting over 20 pounds," "no prolonged standing or walking," and "no repetitive bending or stooping." (AR 448.)

Dr. Abeliuk's supplemental report from the following month confirmed these findings. (AR 453–454.)

## II. LEGAL FRAMEWORK

This Court has jurisdiction under 42 U.S.C. section 405(g). The Court may reverse the ALJ's decision only if it "contains legal error or is not supported by substantial evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (quoting *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989)). It is "more than a mere scintilla but less than a preponderance." *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (quoting *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)). Where the evidence is susceptible to more than one rational conclusion, the Court must uphold the ALJ's decision. *Burch*, 400 F.3d at 679. The Court must "consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Garrison v. Colvin,* 759 F.3d 995, 1009 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue,* 504 F.3d

5

1028, 1035 (9th Cir. 2007)). The Court must rely "only on the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Id.* at 1010; *accord Trevizo v. Berryhill,* 871 F.3d 664 (9th Cir. 2017).

Under the Social Security Act, individuals who are "under a disability" are eligible to receive benefits. 42 U.S.C. § 423(a)(1)(D). A "disability" is defined as "any medically determinable physical or mental impairment" which prevents one from engaging "in any substantial gainful activity" and is expected to result in death or last "for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Such an impairment must result from one or more "anatomical, physiological, or psychological" conditions "demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423 (d)(3). The Act limits eligibility for benefits to those whose impairments "are of such severity that [they are] not only unable to do [their] previous work, but cannot, considering [their] age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. § 423(d)(2)(A); *see also Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

The Act uses a five-step sequential framework to determine whether a claimant is disabled. At Step One, the ALJ must determine whether the claimant is engaged in substantially gainful activity. 20 C.F.R. § 404.1520(b). A person is engaged in substantially gainful activity if engaged in work involving significant physical or mental activities. 20 C.F.R. § 404.1572(a). Gainful work activity is defined as "work usually done for pay or profit," regardless of whether the claimant receives a profit. 20 C.F.R. § 404.1572(b). If the claimant is presently engaged in substantially gainful activity, she is not disabled. If the claimant is not engaged in substantially gainful activity, the ALJ proceeds to Step Two.

At Step Two, the ALJ must determine whether the claimant has an impairment or combination of impairments that is severe. 20 C.F.R. §§ 404.1520(c), 416.920(c). A "severe" impairment is defined in the regulations as one that significantly limits an individual's ability to perform basic work activities. If the claimant does not have a severe impairment or combination of impairments, he is not disabled. If the claimant does have a severe impairment or combination

6

of impairments, the ALJ proceeds to Step Three.

At Step Three, the ALJ must determine whether a claimant's impairment or combination of impairments "meets or equals" the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 416.920(e). If the claimant's impairment or combination of impairments meets the listed criteria and the duration requirement, the claimant is disabled. 20 C.F.R. § 404.1509. If not, the ALJ proceeds to the next step.

At Step Four, the ALJ must determine whether the claimant has the ability to perform past relevant work. 20 C.F.R. § 404.1520(f). Before reaching Step Four in the sequential evaluation, the ALJ must determine the claimant's residual functional capacity ("RFC"). 20 C.F.R. § 404.1520(e). A claimant's RFC consists of the ability to engage in physical and mental work activity on an ongoing basis, in spite of any limitations from impairments. The ALJ considers both severe and non-severe impairments in determining the claimant's RFC. 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant has the RFC to perform past relevant work, then the person is not disabled. If the claimant is unable to do past relevant work or has no past relevant work, the ALJ proceeds to the final step in the sequential evaluation.

At Step Five, the ALJ considers the claimant's RFC, age, education, and work experience to determine whether the claimant can perform any other work. 20 C.F.R. §§ 404.1520(f), 416.920(f). "Substantial work activity is work activity that involves doing significant physical or mental activities. . . . [W]ork may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before." 20 C.F.R. §§ 404.1572(a), 416.972(a). If the claimant can perform other work, he is not disabled. If the claimant cannot perform other work and fulfills the duration requirement, he is disabled.

### III. THE ALJ'S DECISION

In an eleven-page decision dated October 26, 2016, the ALJ applied the five-step sequential analysis to determine whether plaintiff is eligible for disability insurance benefits. Briefly, the ALJ determined as follows:

#### A. Step One

As to Step One of the analysis, the ALJ found that Delacruz had not engaged in substantial

gainful activity since the alleged onset date of June 25, 2013. (AR 17.) Although Delacruz may have worked as a surgical technician during this period, the ALJ found this work did not rise to the level of substantial gainful activity. Further, Delacruz's receipt of income in the form of workers' compensation and unemployment benefits did not constitute substantial gainful activity. (*Id*.)

### B. Step Two

At Step Two, the ALJ found Delacruz had the following severe impairments: degenerative disc disease of the lumbosacral spine with a disc bulge at L4-L5, and lumbar radiculopathy. (*Id*.)

### C. Step Three

At Step Three, the ALJ found that Delacruz did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, including Listing 1.04 (disorders of the spine) and Listing 11.14 (peripheral neuropathies). (AR 18.)

### D. RFC Determination

The ALJ found the Delacruz had "the residual functional capacity to perform light work as defined in 20 CFR. 404.1567(b) with some exceptions." (AR 18.) Specifically, the ALJ found that Delacruz could "lift and/or carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk for about four hours in an eight-hour workday; and sit for about six hours in an eight-hour workday, with normal breaks." (*Id*.) The ALJ further found that Delacruz could "occasionally climb ramps, stairs, ladders, and scaffolding." (*Id*.) However, the ALJ noted that Delacruz "must avoid repetitive bending or stooping" and "should avoid exposure to hazardous machinery and heights." (*Id*.) In making his finding as to RFC, the ALJ noted that he considered "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR. 404.1529 and SSR 96-4p." (AR 18.) The ALJ also "considered opinion evidence in accordance with the requirements of 20 CFR. 404.1527 and SSRs 96-2p, 96-5p, 96-6p, and 06-3p." (*Id*.)

While the ALJ found that Delacruz's medically determinable impairments reasonably could be expected to produce her symptoms, the ALJ determined that "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the

medical evidence and other evidence in the record." (AR 19.) Specifically, the ALJ noted that while Delacruz alleged that she was limited in her ability to work at any exertional level, she also reported that she could perform a wide range of activities of daily living and some multi-step tasks. (*Id.*) Further, the ALJ found that Delacruz's assertion that her chronic low back pain and radicular complaints significantly limited her ability to perform work at any exertional level did not comport with multiple reports that Delacruz was not a candidate for surgical intervention and experienced symptom relief with epidural steroid injections. (*Id.*)

In addition, the ALJ summarized and weighed medical evidence, including: (1) records from Salinas Urgent Care for the period of September 7, 2011 through June 28, 2013, when Delacruz was treated by Dr. Schumann and N.P. Nelson; and (2) findings from other doctors, including orthopedic surgeons (Dr. Wong and Dr. Howard) and a neurosurgeon (Dr. Halamandaris). (AR 20–21.) Further, the ALJ weighed opinion evidence submitted by an orthopedic surgeon who evaluated Delacruz in the context of a workers' compensation claim (Dr. Abeliuk), a consultive examiner (Dr. Hernandez), and physicians from the Office of Disability Determination (Dr. Friedman and Dr. Horn). (AR 21–23.)

### E. Step Four

At Step Four of the analysis, the ALJ found that Delacruz was unable to perform her past relevant work as a surgical technician because "it would require her to stand and/or walk for more than four hours in an eight-hour workday." (AR 23.)

### F. Step Five

Finally, as to Step Five, the ALJ found that, considering Delacruz's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that she could perform. (AR 24.) In so finding, the ALJ noted that Delacruz was 41 years old at the time of the alleged onset date. (*Id.*) Further, the ALJ found that Delacruz had competed two years of college, and therefore, could be categorized as having at least a high school education. (*Id.*) In addition, the ALJ noted that transferability of job skills was not material to his disability determination because "using the Medical-Vocational Rules as a framework supports a finding that [Delacruz] is 'not disabled,' whether or not [Delacruz] has transferable job skills." (*Id.*) The

9

ALJ went on to conclude that Delacruz's "limitations have little or no effect on the occupational base of unskilled light work" which "include[d] the capacity to perform sedentary work." (*Id.*) The ALJ determined that there were "approximately 1600 light and sedentary unskilled occupations . . . , with each occupation representing numerous jobs in the regional or national economy," and that if Delacruz could perform even half of these jobs, "she would have a very favorable vocational profile." (*Id.* at 24–25.)[2]

## IV. DISCUSSION

As no dispute exists on Steps One and Two, the Court moves directly to address each argument at Step Three.

### A. The ALJ's Step Three Determination

Plaintiff argues the ALJ erred by finding that plaintiff did not meet Listing 1.04 on Step Three. For a claimant to show that her impairment matches a Listing, it must meet *all* of the specified medical criteria. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). For a claimant to establish that an unlisted impairment is equivalent to a listed impairment, "[s]he must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment." *Id.* at 531 (emphasis in original); *see also* 20 C.F.R. § 404.1526(b)(1)(ii) (impairment is medically equivalent if it is "at least of equal medical significance" to a listed impairment). If the ALJ finds that a claimant's impairment or a combination of impairments meet or equal a Listing, then the claimant is disabled. *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014)

---

[2] Plaintiff contends that the ALJ erred by analyzing Steps Four and Five because such analysis is not required if an impairment meets or equals a Listing in Step Three. (Motion at 2, 8-9; Reply at 5.) Similarly, plaintiff argues that she is entitled to benefits because the ALJ found that she had not engaged in "substantial gainful activity" under Step One. (Cross-Motion at 1.) Plaintiff's arguments, however, misunderstand the five-step test, wherein each step has independent requirements for a "disability" finding, and the ALJ must proceed through each step *until* he reaches such a finding. Thus, a "substantial gainful activity" finding under Step One does not necessitate a finding that plaintiff has satisfied Step Three. Further, if an ALJ properly determines that a claimant does not satisfy Step Three, it is appropriate for the ALJ to proceed to Steps Four and Five.

10

Here, plaintiff contends that the record supports a finding that her impairment meets or equals the requirements of Listing 1.04, while the Commissioner argues that plaintiff has not met her burden of showing that she meets each requirement of Listing 1.04. (Dkt. No. 34 ("Motion") at 3–7; Dkt. No. 39 ("Cross-Motion") at 4.) Listing 1.04, provides, in pertinent part, as follows:

> **1.04** *Disorders of the spine* (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine); or
>
> B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours[.]

The totality of the ALJ's Step Three determination provided as follows:

> **The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CRF 404.1520(d), 404.1525 and 044.1526)**
>
> While the claimant's medically determinable impairment is severe, the record does not specifically establish that it, either singly or in combination with another medically determinable impairment, meets or medically equals the severity requirements of listings 1.04 (disorders of the spine), 11.14 (peripheral neuropathies), or any other listing described in the Listing of Impairments at 20 CFR, Part 404, subpart P, appendix 1.

(AR 18, emphasis in original.)

The Ninth Circuit has held that "an ALJ must evaluate the relevant evidence before concluding that a claimant's impairments do not meet or equal a listed impairment. ***A boilerplate finding is insufficient to support a conclusion that a claimant's impairment does not do so***." *Lewis v. Apfel,* 236 F.3d 503, 512 (9th Cir. 2001) (emphasis supplied); *see also Gonzalez v. Sullivan,* 914 F.2d 1197, 1201 (9th Cir. 1990) (noting that although "[i]t is unnecessary to require the [ALJ], as a matter of law, to state why a claimant failed to satisfy every different section of the listing of impairments," the ALJ's decision must contain "an adequate statement" of the "foundations on which the ultimate factual conclusions are based"). Here, no such analysis was

done.

The Court recognizes that following the ALJ's Step Three determination, the ALJ proceeded to Step Four and discussed the record evidence in greater detail there. (AR 18–23.) Although it is not at all clear whether the ALJ considered this evidence in reaching his Step Three determination, the Court nevertheless reviews this portion of the decision insofar as it may lend support to that determination. *See Lewis,* 236 F.3d at 513 (holding that although an ALJ must "discuss and evaluate the evidence that supports his or her conclusion" as to Step Three, there is no requirement "that the ALJ [] do so under the heading 'Findings'"); *see also Stevens v. Colvin*, No. 13-CV-02830-NJV, 2014 WL 7004813, at *4 (N.D. Cal. Dec. 10, 2014) (granting plaintiff's motion for summary judgment on Social Security appeal where there was "evidence of record regarding [plaintiff's] impairments," but the ALJ "ma[de] no mention of . . . why [p]laintiff's limitations fail to meet the listings."); *Campos v. Colvin*, No. C 13-03327 SI, 2014 WL 4635622, at *5 (N.D. Cal. Sept. 15, 2014) ("While the ALJ stated that he considered section 3.03 of the listings, the ALJ's decision does not establish that he evaluated the relevant medical evidence.").

The ALJ's discussion of the opinion evidence, although reasonably detailed as to his findings on RFC and Step Four, contains few references to medical evidence regarding the Listing 1.04 criteria. Indeed, the *only* medical evidence cited in the ALJ's decision that specifically supports his Step Three determination comes from Dr. Howard's report, which indicated "no remarkable neurocompression or spinal stenosis." (AR 21.) However, this evidence, without more, does not establish that the ALJ's Step Three determination was based on "substantial evidence."[3] This is especially so where much of the evidence cited by the ALJ *contradicts* his

---

[3] The ALJ's decision provides a "Summary of the Medical Evidence of Record" and a "Discussion of the Opinion Evidence." (AR 20–21.) Mere summarization does not constitute an analysis, discussion, or evaluation.

Included in the summary, the ALJ cites the medical records of Dr. Wong, who examined plaintiff on October 27, 2011. (AR 20.) The Court notes that Dr. Wong's records report bilateral negative straight-leg raising tests in seating and supine positions, as well as no evidence of muscle weakness or reflex loss. (AR 401.) This evidence may support a finding that plaintiff fails to satisfy Listing 1.04. However, the ALJ did not address this specific portion of Dr. Wong's report, and moreover, as discussed herein, there is conflicting evidence in the record regarding plaintiff's straight-leg raising tests, muscle weakness, and reflex loss. Thus, even assuming the ALJ

12

finding that plaintiff failed to satisfy Listing 1.04. For example, the ALJ cites medical evidence showing that several physical examinations found plaintiff to have "decreased range of motion." (AR 20.) Further, the ALJ noted that "[n]eurodiagnostic testing," including nerve conduction studies and an electromyogram, were "noted to be abnormal due to denervation of the right L5 and S1 muscles and paraspinal muscles." (*Id.*) That neurodiagnostic testing also showed signs of radiculopathy, which is referenced numerous times in the ALJ's decision, and which plaintiff points out "is defined as an 'irritation of or injury to a nerve root (as from being compressed).'" (Dkt. No. 40 ("Reply") at 4, citation omitted.)[4]

*Cleves v. Astrue*, No. C09-03624 WHA, 2010 WL 682465 (N.D. Cal. Feb. 24, 2010) is instructive. There, the court granted a claimant's motion for summary judgment on a Social Security appeal after finding that, like here, the ALJ "did not make any findings that would preclude plaintiff from establishing a Listing, and in fact, stated evidence that contradicted his own conclusion." (*Id.* at *3.) Specifically, the court noted that although the ALJ stated that the claimant "show[ed] none of the nerve root compromise required by Listing 1.04(A)," later in his decision, he referenced medical evidence stating that the claimant's "cervical nerve roots were compromised." (*Id.*, emphasis omitted.)

Another court in this district reached the same conclusion in *Branch v. Astrue*, No. C 07-05530 SI, 2008 WL 3184490 (N.D. Cal. Aug. 4, 2008). In *Branch*, the court remanded a Social Security appeal for further proceedings where "the ALJ merely listed the criteria under Listing 1.04A and made a cursory finding that plaintiff d[id] not meet each element of the listing." *Id.* at

---

considered these findings from Dr. Wong in reaching its determination on Step Three, this still would not constitute "substantial evidence" to support the ALJ's finding.

[4] In support of her contention that she satisfied Step Three, Delacruz points to medical findings from 2011 and 2012. (Motion at 3–4.) The Commissioner counters that because these records predate the alleged onset date of June 25, 2013, they are of "limited relevance." (Cross-Motion at 4, citing *Carmickle v. Comm'r, Soc. Sec.,* 533 F.3d 1155, 1165 (9th Cir. 2008).) Although *Carmickle* is controlling precedent, medical records that predate the alleged onset date still may be of *some* relevance. That is particularly true here, where the onset date is based on Delacruz's last day of work, rather than a precipitating event, and the record evidence indicates her symptoms began in September 2011. (AR 457.)

13

\*3. The court noted that the ALJ did not explain how he reached his conclusion that the plaintiff did not meet the Listing "despite evidence showing neural foramen narrowing on his MRI, as well as evidence from plaintiff's neurological and orthopedic evaluations indicating his limping gait, limited motion in the 5 back, and sensory and motor loss." *Id*. at \*4. Similarly, here, the ALJ cited to evidence supporting a finding that Delacruz satisfied at least some of the Listing 1.04 criterion, then concluded that Listing 1.04 wasn't satisfied. The Court cannot properly assess the ALJ's determination without further explanation.

In addition, the Court notes that during the administrative hearing on Delacruz's application, the ALJ asked Delacruz's husband, who was representing her, to address each of the elements of Listing 1.04. (AR 49.) As to a straight-leg raising test, the ALJ accepted "as an offer of proof," a report from Dr. Abeliuk, an orthopedic surgeon who evaluated Delacruz in the context of a workers' compensation claim. (*Id*.) The ALJ then stated that the parties had "talked about pain," presumably referring to the Listing 1.04 requirement of "evidence of nerve root compression characterized by neuro-anatomic distribution of pain." (*Id*.) Next, the ALJ found that, based on Dr. Abeliuk's report, "you've got limited range of motion." (AR 51.) The ALJ then addressed the motor loss requirement of Listing 1.04:

> ALJ: Do we have motor loss with atrophy[?] Is there any atrophy, muscle atrophy?
> Mr. Delacruz: In, in here in the report? I, Allison, do you know, do you have any atrophy?
> Claimant (telephonically): I don't think there was atrophy.
> Mr. Delacruz: Nevertheless, I don't see how the lack of atrophy would disqualify this. It's still lack of motion.
> ALJ: Well, it doesn't care what you think. The listing, to meet the listing at Step 3, you must have atrophy.
> Mr. Delacruz: On Step 3?
> ALJ: Yeah. Okay. Now let's talk about [RFC] as it relates to Step 4 and 5.

(AR 51.)

As an initial matter, the Court notes that the ALJ's Step Three determination must be based on objective medical evidence in the record, not merely Delacruz's statement that she did not *think* she suffered from muscle atrophy. Thus, insofar as Delacruz's statement may have led to the ALJ's conclusory Step Three determination, that determination warrants re-evaluation.

14

Furthermore, the Court notes that the ALJ misstated the "motor loss" requirement of Listing 1.04. Listing 1.04 defines motor loss as "atrophy with associated muscle weakness *or* muscle weakness." 20 C.F.R. Part 404, Subpart P, App. 1, Listing 1.04 (emphasis supplied). Thus, even if plaintiff did not suffer from muscle atrophy, she could have satisfied Listing 1.04 if the evidence on record demonstrated "muscle weakness" such that she suffered from "motor loss."

Accordingly, the Court finds that the ALJ's conclusory determination as to Step Three, and in particular as to plaintiff's failure to satisfy Listing 1.04, is insufficient. The Court takes no position on whether plaintiff has satisfied any Listing, including Listing 1.04.[5] The Court only finds that because the ALJ has not sufficiently explained his findings as to Step Three, reversal of the ALJ's determination is warranted.[6]

**B.     Relief**

Having found that the ALJ's Step Three determination was not based on substantial evidence, the Court next addresses the question of whether to remand for further administrative proceedings or for payment of benefits.

A court may remand for an award of benefits only if (1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; (2) no outstanding issues must be resolved before a determination of disability can be made; and (3) the record clearly establishes that the ALJ would be required to find the claimant disabled were such evidence credited. *Benecke v. Barnhart,* 379 F.3d 587, 593 (9th Cir. 2004) (citing *Harman v. Apfel,* 211 F.3d 1172, 1178 (9th Cir. 2000)). Generally, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Id.* at 595 (citing *INS v. Ventura,* 537 U.S. 12, 16, 123 S.Ct. 353, 154 L.Ed.2d 272 (2002)), *Moisa v. Barnhart,* 367 F.3d 882, 886–87 (9th Cir. 2004)).

---

[5] The Court notes that plaintiff's reliance in her moving papers on medical records showing degenerative disc disease and high levels of pain, without more, is insufficient to satisfy Listing 1.04, which requires that a claimant's impairment meet *each* of its several criteria.

[6] Having found that the ALJ erred at Step Three, the Court will not address plaintiff's arguments regarding the ALJ's RFC determination. *See Campos v. Colvin*, No. C 13-03327 SI, 2014 WL 4635622, at *5, n.2 (N.D. Cal. Sept. 15, 2014) (assessing plaintiff's arguments as to the RFC determination would be "premature" when remanding based on error at Step Three).

15

Here the Court reverses and remands for the ALJ to explain his analysis as to Step Three, and if necessary, reevaluate his determinations as to the subsequent steps. *See Frost v. Barnhart,* 314 F.3d 359, 363–364 (9th Cir. 2002) (reversing and remanding for further proceedings where ALJ determined that plaintiff was not disabled without considering requirements of several applicable listings); *Campos v. Colvin*, No. C 13-03327 SI, 2014 WL 4635622, at *5 (N.D. Cal. Sept. 15, 2014) (where ALJ did not sufficiently explain Step Three determination, "[t]he medical evidence must be evaluated anew; if following remand of this matter the ALJ does not find plaintiff disabled at step three, he must reassess plaintiff's RFC"); *Brown v. Berryhill*, No. 17-CV-02946-SVK, 2018 WL 1989535, at *11 (N.D. Cal. Mar. 16, 2018) ("The ALJ's listing determination under Step 3 controls whether the ALJ must reach the issue of residual functional capacity at Step 4. . . . Accordingly, the Court also remands for consideration of Step 4.") On remand, the ALJ should reconsider whether plaintiff's impairment meets or equals any Listing, including Listing 1.04, *and* support his findings with a discussion of the relevant medical evidence on which his determination is based.

## V. CONCLUSION

For the foregoing reasons, the Court **GRANTS** plaintiff's motion and **DENIES** defendant's cross-motion for summary judgment. The case is **REMANDED** to the ALJ for further administrative proceedings.

This Order terminates Docket Numbers 34 and 39.

**IT IS SO ORDERED.**

Dated: June 27, 2019

YVONNE GONZALEZ ROGERS
UNITED STATES DISTRICT COURT JUDGE

16